IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOHN DOE, | Case No.  1:19-cv-00136-TSB |
| Plaintiff, | Judge:  BLACK |
| v. | REPLY TO RESPONSE TO RENEWED MOTION FOR PRELIMINARY INJUNCTION |
| DIRECTOR, MIAMI UNIVERSITY OFFICE OF COMMUNITY STANDARDS, ET AL, | |
| Defendants | |

Pursuant to Federal R. Civil Rule 65, Plaintiff John Doe respectfully submits this Reply to the Response to the Renewed Motion for Preliminary Injunction.  Plaintiff seeks a preliminary injunction prohibiting Defendants, who are employees of Miami University, from proceeding with a disciplinary hearing in violation of his constitutional due process rights.

## REPLY MEMORANDUM

A preliminary injunction is necessary to preserve the *status quo* by allowing John Doe to exercise his constitutional right to remain silent during a criminal investigation without the pressure of having to represent himself in a school disciplinary hearing.

### A.     The Limited Relief Sought

Defendants, at a number of occasions, suggest that the injunctive relief sought could last as long as the statute of limitations for sexual assault under Ohio law – 25 years.  *See e.g.* Def. Memo. at 3 (disciplinary proceeding "cannot be expected to be put on hold for potentially a quarter of a century"); Def. Memo. at 17 (disciplinary hearing could not continue "until the accused student was acquitted, convicted, or the statute of limitations had expired").  *This* is not *that* case.  John Doe is not

requesting an open-ended injunction and the Court should decline to deny limited relief based on hypotheticals.

Defendants further suggest that an injunction in this case would have broad implications, even to the point of prohibiting "any" disciplinary proceedings "where there is a potential for criminal charges." Def. Memo. at 17. This is, Plaintiff concedes, a legitimate concern. But that concern has been addressed by the Supreme Court. The Court, in other cases dealing with Fifth Amendment claims, has already established a limiting principle:

> The central standard for the… application [of the fifth amendment privilege against self-incrimination is] whether the claimant is confronted by substantial and 'real', and not merely trifling or imaginary, hazards of incrimination.

*Marchetti v. United States*, 390 U.S. 39, 53 (1968). The privilege, thus, applies only in "instances where the witness has reasonable cause to apprehend danger" of criminal liability. *Hoffman v. United States*, 341 U.S. 479, 486 (1951). *Cf. United States v. Reis*, 765 F.2d 1094, 1096 (11th Cir.1985) (per curiam) (claimant of Fifth Amendment privilege "must provide more than mere speculative, generalized allegations of possible… prosecution"). The Sixth Circuit has observed that the Court has provided "a workable mode in which to discern" whether the privilege is applicable. *United States v. Alkhafaji*, 754 F.2d 641, 658 (6th Cir. 1985), *citing United States v. Apfelbaum,* 445 U.S. 115, 128 (1980).

Under this standard, an accused student could not assert a similar claim based on a speculative, generalized concern about a sexual assault prosecution; instead, the student must face a substantial and real hazard of self-incrimination. In other words, a student must show he has a reasonable apprehension of criminal prosecution. This rules out the overwhelming majority of school disciplinary cases. Moreover, Plaintiff meets this standard. As set forth in the supporting Affidavit of Scott Kruger, John Doe is the subject of an active investigation and is awaiting the results of lab results so the prosecution can make a decision. (Kruger Aff. ¶¶5-6 (PageID#78).)

**B.      Plaintiff's Claims Are Ripe**

Defendants argue that "there is no cognizable due process claim here" because Plaintiff failed to exhaust an available administrative.  This ripeness argument fails because the Supreme Court has held that exhaustion of state remedies is not required before a plaintiff can bring suit under §1983 for denial of due process.  *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516, (1982); *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, (1987).  The *Patsy* decision was based upon a recognition that Congress, in enacting §1983, had "assigned to the federal courts a paramount role in protecting constitutional rights."  457 U.S. at 503.[1]

In other cases, brought under motion to dismiss standards, federal courts have relied on *Patsy* to hold that complaints brought by students alleging due process violations in a hearing process should

---

[1] By way of illustration, a property owner was not required to go through the appeal process in order to state a cognizable procedural due process claim. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 220-223 (5th Cir. 2012) *citing, inter alia, Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("Even if respondents' suspensions were justified, and even if they did not suffer any other actual injury, the fact remains that they were deprived of their right to procedural due process.").

Defendants' reliance on *Doe v. Univ. of Kentucky*, 860 F.3d 365 (6th Cir. 2017), is misplaced.  In *Univ. of Kentucky*, the Sixth Circuit applied *Younger* abstention principles, reasoning that a school disciplinary proceeding "contains enough protections and similarities to qualify as 'akin to criminal prosecutions.'" 860 F. 3d at 370.  In this case, Defendants explicitly state that the school disciplinary proceeding is distinct from a criminal proceeding.  Def. Memo. at 5.  *Univ. of Kentucky* is also distinguishable on the grounds that the student was able to previously raise his constitutional claims in the university proceeding.  Ohio law is different.  Ohio generally does not permit parties to raise constitutional claims in state administrative proceedings.  *See Fairview General Hosp. v. Fletcher*, 63 Ohio St. 3d 146, 149 (1992); *Buckeye Quality Care Centers, Inc.*, 48 Ohio App.3d 150, 154 (1988).

If this Court follows the analysis in *Univ. of Kentucky* and applies the *Younger*, analysis, this Court must then consider an exception to the *Younger* doctrine.  *Younger* abstention does not apply is there is "an extraordinarily pressing need for immediate federal equitable relief." *Kugler v. Helfant*, 421 U.S. 117, 125 (1975).  In this case, as discussed in Plaintiff's Memo. and *infra*, Plaintiff will suffer irreparable harm if the Court abstained from exercising its jurisdiction.  *See Lighthouse Community Church of God v. City of Southfield*, 382 F.Supp.2d 937, 941 (E.D.Mich.2005) ("To examine this exception, the [c]ourt looks to the irreparable harm that [a plaintiff] might suffer if the [c]ourt abstained from exercising its jurisdiction."); *Russell v. Giles Cty.*, 105 F.Supp.2d 841, 846 (M.D.Tenn.2000) ("In a situation where the plaintiff will suffer irreparable harm if the federal court does not grant equitable relief, a federal court may enjoin a state criminal proceeding begun prior to federal proceeding.").

be permitted to continue even though further proceeding at the school were available. *Yoder v. Univ. of Louisville*, 2009 U.S. Dist. LEXIS 67241, 13-14 (W.D. Ky. Aug. 3, 2009), *rev'd on other grounds* 417 Fed. Appx. 529 (2011); *Pomeroy v. Ashburnham Westminster Reg'l Sch. Dist.*, 410 F. Supp. 2d 7, 16 (D. Mass. 2006). In *Yoder*, a nursing student was dismissed as a student from the University of Louisville School of Nursing. The court held that a student was not required to pursue remedies within the University systems in order to maintain a §1983 claim. The court said, "the law is clear that exhaustion is not a prerequisite to maintenance of an action under §1983." 2009 U.S. Dist. LEXIS 67241 at 13-14, *citing Patsy*, 457 U.S. at 500-501. In *Pomeroy*, a student brought a claim under §1983 that he was denied due process in a school disciplinary hearing. The school district argued that the claim should be dismissed because state law and local regulations provide for an appeal of the suspension to the superintendent and subsequent judicial review of that appeal. The court concluded that the §1983 claim survived even though the student did not pursue these available appeals. 410 F. Supp. 2d at 17 n. 6 (a "plaintiff is not normally required to exhaust state remedies before commencing a § 1983 action) (citations omitted). *See also Nasierowski Bros. Invest. Co. v. Sterling Hts.*, 949 F.2d 890, 894 (6th Cir. 1991) (a procedural due process claim is "instantly cognizable in federal court without requiring a final decision").

Recently, a court in this Circuit issued an injunction against a university disciplinary proceeding prior to the hearing. *Doe v. Univ. of Michigan*, 325 F. Supp. 3d 821, 826 (E.D. Mich. 2018). In that case, a district court granted a preliminary injunction prohibiting a public university from continuing with an unconstitutional disciplinary process. In doing so, the court explicitly rejected an almost identical ripeness argument. The court said,

> if the Court denies this Motion, but ultimately finds that the Policy violates due process, Plaintiff will have been forced to defend himself against serious sexual assault allegations without adequate constitutional safeguards. Defendants essentially ask the Court to sit back and wait… But, at this very moment, the University may be denying Plaintiff due process protections to which he is entitled. The Court cannot, and will

4

not, simply stand by as the fruit continues to rot on the tree. This case is ripe for adjudication.

325 F. Supp. 3d at 826.

## C.     Plaintiff Has A Substantial Likelihood of Success.

Defendants acknowledge that Plaintiff is entitled to due process in the disciplinary proceedings held at Miami University and that the *Mathews v. Eldridge*, 424 U.S. 319 (1976), balancing test applies.

### 1.     Miami Does Not Have A Policy That An Adverse Inference Will Not Be Drawn From Silence.

Defendants make one significant mistake about the record. Defendants claim that Miami University will not draw an adverse inference from Plaintiff's silence.[2] However, no Miami policy contains such a provision. (*See* Complaint ¶¶ 40-41 (PageID#12).) Notably, the Complaint indicates that Miami University did not respond to a request from Plaintiff to an administrator that the hearing panel "be instructed that they cannot draw any inferences from my silence."[3] (Complaint ¶50(b) (PageID#15).) The absence of such a policy is highlighted here because it will be significant in distinguishing the cases cited by Defendants. *See infra.*

### 2.     The Due Process Violation

Defendants are correct that Plaintiff has not cited any "authority directly on point." Def. Memo. at 11. This is because the issue presented by this Motion is an issue of first impression in this Circuit. Importantly, though, the Court does not address this issue in a vacuum. Plaintiff cites a number of cases on pages 9-10 of his Memorandum where courts have granted injunctive relief to students accused of sexual misconduct. These cases are notable because, prior to these cases, very

---

[2] Defendants refer to an email from the investigator. The investigator told Plaintiff, "I do not hold your silence against you…" (Doe. Aff ¶6 (PageID#74).) However, the record reflects that investigator then proceeded to comment on Plaintiff's silence and noted that the statements of the complainant were "unopposed." (Doe. Aff ¶7 (PageID#74).)

[3] *Compare   Hart v. Ferris State College*, 557 F.Supp. 1379, 1385 (W.D.Mich.1983) (school submitted affidavit of hearing officer stating that silence would "not work against" the accused student).

few decisions favored accused students. These cases, thus, are indicative of the heightened scrutiny applied by federal courts of restrictive procedures adopted by schools following the 2011 Dear Colleague letter. *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 582-583 (E.D.Va.2018) ("Some commentators, including some federal courts, have observed that this spate of cases can be traced to the now-rescinded April 4, 2011 Dear Colleague Letter…"); *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1072 (S.D. Ohio 2017) ("There is little doubt that universities around the country have felt pressure to tighten the investigation and punishments in sexual misconduct cases because this is a very sensitive issue."). Plaintiff respectfully suggests that the message of the Sixth Circuit underlying the recent decisions in *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017), and *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018), is that courts should view the actions of schools more critically than in the past. The pre-2011 cases relied upon by Defendants are inapposite because they were decided in an era when courts were much more deferential to school administrators. *See* Def. Memo. at 6-9, *citing Gabrilowitz v. Newman*, 582 F.2d 100, 103 (1st Cir. 1978); *Wimmer v. Lehman*, 705 F.2d 1402 (4th Cir. 1983); *Crowley v. U.S. Merch. Marine Acad.*, 985 F. Supp 292 (E.D.N.Y. 1997).[4]

No court has addressed this issue since the issuance of the Dear Colleague letter. The most recent decision to address this issue, to the knowledge of the parties, was also decided prior to the issuance of the Dear Colleague Letter. *Coulter v. E. Stroudsburg Univ.*, M.D.Pa. No. 3:10-CV-0877, 2010 U.S. Dist. LEXIS 43866 (May 5, 2010). The *Coulter* case, perhaps anticipating the change in judicial approach to student discipline cases (unlike the 20th Century cases relied upon by Defendants), found in favor of the student. The problem identified in *Coulter* is exactly the same as this case. In *Coulter*,

---

[4] *Wimmer* and *Crowley* are additionally distinguishable because in those cases, unlike in the case, the institutions had a specific policy of not drawing adverse inferences against a student's silence. In *Wimmer*, unlike in this case, the rules seemed to specifically provide that "no inferences were to be drawn against [the student] from silence." 705 F.2d at 1407. In *Crowley*, unlike in this case, the Academy had "a well-established policy not to… infer from [a student's] silence that the charges are admitted." 985 F.Supp. at 295.

6

as in this case, the student faced simultaneous criminal and school disciplinary investigations. And in *Coulter*, as in this case, the student was prohibited to be represented by counsel during the disciplinary hearing. The court tied the Fifth Amendment problem to this lack of representation:

> By denying Plaintiff any type of active representation in this situation, the University was essentially forcing Plaintiff to choose between exposing herself to criminal liability and the serious consequences associated therewith or protecting herself from possible academic sanctions. In most circumstances, students put in that situation will be driven to make the same decision. This means that the students will not be able to defend themselves properly, present evidence, or cross-examine the witness, leading to a one-sided hearing that might very likely result in an erroneous suspension or expulsion.

2010 U.S. Dist. LEXIS 43866, at *8-9. The only difference between *Coulter* and this case is the remedy sought. The *Coulter* court required the school to permit active representation by counsel; in this case Plaintiff seeks an injunction against holding the hearing.

Plaintiff acknowledges that if Miami University permitted active representation by counsel at disciplinary hearings, like required by the court in *Coulter*, then the Court should deny this Motion. But Miami University does not allow active representation by counsel. This fact distinguishes this situation from the general rule, correctly cited by Defendants, that civil or administrative matters are not required to be stayed pending the resolution of criminal matters.[5] *See* Def Memo. at 9-10 (collecting cases). In the cases cited by Defendants on pages 10-11 of Defendant's Memorandum, there is no indication that the person facing simultaneous civil and criminal investigations was, as in this case, prohibited from being actively represented by counsel.[6] As a result, the person facing

---

[5] This Court has observed, relevantly, "simultaneous criminal and civil cases involving the same or closely related facts may give rise to Fifth Amendment concerns sufficient to warrant a stay of the civil proceedings." *Baird v. Daniels*, S.D.Ohio No. 1:12-cv-945, 2013 U.S. Dist. LEXIS 16576, at *3 (Feb. 7, 2013), *citing Claborn v. State of Ohio*, S.D. Ohio No. 2:11cv679, 2011 U.S. Dist. LEXIS 137629 (Nov. 30, 2011).

[6] *See e.g. United States v. Kordel*, 397 U.S. 1, 9-10 (1970) )"The respondents do not suggest that [the witness] who answered the interrogatories… did so while unrepresented by counsel"); *Peiffer v. Lebanon School Dist.*, 848 F.2d 44, 45 (3d Cir. 1988) (attorney representing accused at disciplinary hearing "could cross-examine witnesses against his client and present witnesses himself");

simultaneous civil and criminal investigations in those cases could do what Plaintiff in this case, as observed by the *Coulter* court, cannot: make opening and closing statements, present evidence, and cross examine witnesses without risking self-incrimination. The undisputed facts in this record support this conclusion. An attorney who regularly advises students in Miami University disciplinary proceedings states:

> [I]t is essentially impossible for an accused student to present a defense without speaking about the incident, asking questions of the witnesses (questions which themselves will necessarily contain factual assertions by the accused), and presenting exhibits (which, again, may be viewed as assertions by the accused).

(Lazares Aff. ¶10 (PageID#77).) This evidence is undisputed.

Defendants suggest that courts "have consistently rejected students' reliance" on *Garrity v. New Jersey*, 385 U.S. 493 (1967), and *Lefkowitz v. Cunningham*, 431 U.S. 801 (1977). This appears to be an over-statement; Defendants in this section of Defendant's Memorandum do not draw this Court's attention to any additional authorities beyond *Gabrilowitz* and *Wimmer*.

Defendants next suggest that the "directly imposed penalty" presented in *Garrity* is a key distinction from the failure to testify in this case. Defendants argue, in this respect, that there is no "direct" penalty in this case because "Plaintiff is not required to make a statement or face expulsion." Def. Memo. at 13. This difference is (i) overly formalistic; and (ii) contrary to the undisputed facts in the record. *See* Lazares Aff. ¶7 (PageID#76) ("if a student does not attend a Title IX Hearing, or offer any statement in the student's own defense at a Title IX Hearing, the accused student is all but certain to be found responsible for the allegations").) This difference is also inconsistent with the Supreme Court's "penalty cases." The core holding in these cases is that the government may not impose a penalty on a person for asserting his or her Fifth Amendment privilege. In *Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977), the Court seems to have rejected the "direct deprivation" argument, suggesting, "direct economic sanctions… are not the only penalties capable of forcing the self-incrimination." The penalty in the Supreme Court cases could be direct or indirect, including not

8

only the loss of jobs, but also state contracts, future contracting privileges with the state, political office, and the right to run for office. In each instance the accused party faced inevitable consequences as a result of the exercise of his or her Fifth Amendment rights. Whether the consequence was by direct or indirect means should be immaterial. A holding otherwise means that the government has found the effective way to punish a student for exercising the privilege. The Hobson choice decried by *Garrity* still exists.[7]

### 2. The Limited Interest Of Miami University

Defendants barely acknowledge the portion of the *Mathews* test that focuses on the risk of an erroneous outcome. *See* Def. Memo. at 14 (acknowledging that school has an interest in reaching the truth). Significantly, Defendants do not contest that delaying the hearing will lead to a more accurate and reliable result because the hearing panel will have the benefit of the evidence the prosecutor's office is waiting for: lab results. This is an important factor. *See e.g. Kropat v. FAA,* 333 U.S.App.D.C. 239, 162 F.3d 129, 133 (1998) ("because both [sides] have important interests at stake, our analysis focuses on the last of the three *Mathews* factors--the probable value, in terms of accuracy and efficiency…"); *Benham v. Ledbetter*, 785 F.2d 1480, 1489 (11th Cir.1986) ("the Mathews concern with accuracy is of a special character. Both [parties] have an interest in a correct decision"). And, as the Sixth Circuit notes, "Reaching the truth through fair procedures is an interest" an accused student and a school "have in common." *Univ. of Cincinnati*, 872 F.3d at 402.

Defendants present no evidence to this Court – either by affidavit or otherwise – supporting a claim that Miami University will suffer any harm if the Court grants an injunction. And Defendants

---

[7] Justice Powell, sitting by designation with the Fourth Circuit, articulated the import of *Garrity* and the other penalty cases: "If the State presents a person with the 'Hobson's choice' of incriminating himself or suffering a penalty, and he nevertheless refuses to respond, the State cannot constitutionally make good on its threat to penalize him." *Wiley v. Doory*, 14 F.3d 993, 996 (4th Cir. 1994), *quoting Minnesota v. Murphy*, 465 U.S. 420, 443 (1984) (Marshall, J., dissenting).

never explain, beyond conclusory assertions, why Miami University will be harmed by a delay in the disciplinary process until the start of the Fall 2019 Semester.[8]

Instead, Defendants claim that they have an interest in "responding promptly" to the Title IX Complaint against John Doe. Def. Memo. at 14. This is true, but Defendants cite no authority suggesting that Title IX requires a hearing in a certain time frame. The term "prompt" is undefined either by statute or regulations. Under the 2011 Dear Colleague Letter (which were not regulations), schools were generally required to complete investigations and adjudications in 60 days. However, as noted in Plaintiff's Memorandum, the 2011 Dear Colleague Letter has been withdrawn and the Department of Education has promulgated proposed regulations. *See, generally, Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 83 Fed. Reg. 61462 (proposed Nov. 29, 2018) (to be codified at 34 C.F.R. pt. 106). The comments to the Proposed Regulations indicate that the prior standard for "prompt" resolution of sexual misconduct allegations on campuses led to less reliable outcomes. The Department writes,

> Some recipients felt pressure in light of prior Department guidance to resolve the grievance process within 60 days regardless of the particulars of the situation, and in some instances, this resulted in hurried investigations and adjudications, which sacrificed accuracy and fairness for speed.

---

[8] Defendants suggest that "there is nothing preventing Plaintiff from returning to campus or registering for classes." But, the undisputed record reflects that Plaintiff has taken a leave of absence for the Spring 2019 semester and does not plan to be on campus. (Doe Aff. ¶6 (PageID#73.) If Miami schedules a hearing when Plaintiff suggests – the beginning of Fall 2019 Semester – Plaintiff would not be able to return if he were found responsible.

This outcome is consistent with the policy underlying Title IX. The statute is designed to protect access to education, not punish students who violate school rules. Under Title IX, Miami University is required only to protect the educational opportunities of the complainant. Defendants never explain why, as long as Plaintiff is not on campus, her educational opportunities are effected in any way. The record on this is tellingly silent. This gets at a fundamental problem underlying Defendants' position. The school's disciplinary process is not intended to be a substitute for the judicial process or a mechanism for seeking justice. *See* Laura Kipnis, *Eyewitness to a Title IX Witch Trial*, Chronicle of Higher Ed., April 2, 2017 (describing Title IX hearing as "the campus equivalent of a purification ritual").

*Id.* at ¶116. In fact, the new, proposed, regulation specifically suggest that while there should be "reasonably prompt timeframes" for resolution of the disciplinary process, schools should also specifically consider delays when there is a concurrent law enforcement investigation. Schools must provide

> a process that allows for the temporary delay of the grievance process or the limited extension of timeframes for good cause … Good cause may include considerations such as the absence of the parties or witnesses, *concurrent law enforcement activity*, or the need for language assistance or accommodation of disabilities.

*Id.,* proposed paragraph (b)(1)(v) (emphasis supplied). This language suggests that the school's interest in moving forward on the schedule it desires is limited.

**D.     Irreparable Harm**

Defendants do not contest that the law in this Circuit is that suspension or the imposition of other discipline would constitute irreparable harm. *See* Pl. Memo. at 16 (collecting cases). This Court recently, even when denying a motion for a preliminary injunction by a student, nonetheless found that the student had "demonstrated irreparable harm" and that "the second element of the injunction test weighs in favor of granting a preliminary injunction." *Roe v. Univ. of Cincinnati*, S.D. Ohio No. 180-cv-132 (Order, August 21, 2018) (Docket #25).

**E.     Harm to Third Parties and Public Interest**

Defendants suggest that injunctive relief will cause the alleged victim "substantial harm." Def. Memo. at 16. This argument fails for two reasons. First, it is not supported by any evidence in the record. *See Doe v. Univ. of Cincinnati*, 223 F. Supp. 3d 704, 712 (S.D.Ohio 2016), *aff'd* 872 F.3d 393 (6th Cir. 2017) (finding that that an injunction would not harm third parties where "there is no evidence in the record to the contrary"). Second, the only case cited by Defendants actually supports the opposite conclusion. Defendants cite the Sixth Circuit's opinion in *Doe v. Univ. of Cincinnati* for the position that the alleged victim has the right to attend a school "without fear of sexual assault or harassment." But in *Univ. of Cincinnati* the Sixth Circuit, in upholding a preliminary injunction issued

11

by this Court, noted that the alleged victim actually benefits from requiring schools to adopt additional procedural protections: "One-sided determinations are not known for their accuracy. [The alleged victim] deserves a reliable, accurate outcome as much as [the plaintiff]." 872 F.3d at 404.

Finally, the public interest in maintaining school discipline can be protected, if the Court deems appropriate, by the fact that Plaintiff is not present on campus. Plaintiff will abide by any restrictions imposed by the Court as part of any injunctive relief, including an Order that he have no contact with the alleged victim. *Cf. Roe v. Adams-Gaston*, S.D.Ohio No. 2:17-cv-945, 2018 U.S. Dist. LEXIS 185697, at *47-48 (Apr. 17, 2018) (finding that public interest factor weighs in favor of issuing an injunction where plaintiff "would not remain on campus").

## CONCLUSION

Pursuant to Fed. R. Civil P. 65, this Court should grant a Preliminary Injunction prohibiting Defendants from pursuing a disciplinary hearing against John Doe while a criminal investigation is pending, or until August 26, 2019.

Respectfully submitted,

_____/s/ Joshua Adam Engel_____
Joshua Adam Engel (0075769)
Anne Tamashasky (0064393)
ENGEL AND MARTIN, LLC
4660 Duke Drive, Ste. 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been electronically served via the Court's CM/ECF system this March 23, 2019 upon all counsel of record.

/s/ Joshua Engel
Joshua Adam Engel (0075769)