**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| JANE ROE, | : | Case No. 1:19-cv-136 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| DIRECTOR, MIAMI UNIVERSITY, OFFICE OF COMMUNITY STANDARDS, *et al.*, | : | |
| Defendants. | : | |

**ORDER DENYING PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION**

This civil action is before the Court on Plaintiff's renewed motion for a preliminary injunction (Doc. 11) and the parties' responsive memoranda. (Docs. 12, 13).

## I. BACKGROUND

**A. Factual Background**

Plaintiff John Doe is an undergraduate student at Miami University.[1] Doe is accused of sexually assaulting Jane Roe, a female student at Miami University, on November 18, 2018. (Doc. 1 at ¶ 44). After the alleged assault, Roe contacted the Oxford, Ohio police (the "Oxford Police") and the Oxford Police started an investigation into possible sexual assault by Doe and obtained a search warrant for his room. (*Id.* at ¶ 45). Doe declined to give a statement to the Oxford Police. (*Id.*).

---

[1] On February 22, 2019, Plaintiff filed an unopposed motion for leave to proceed anonymously, for good cause shown, that motion (Doc. 4) is **GRANTED**.

On November 19, 2018, Roe made a complaint of sexual misconduct to Miami University and the Defendant Office of Community Standards began an investigation. Defendant Wesley Highly investigated the allegations against Doe. (*Id.* at ¶ 46). Doe declined to give a comment to the Office of Community Standards and notified Highley that he had retained counsel and "been advised not to make any statements regarding these allegations at this time" and that he would provide a statement once "any criminal inquiries are closed." (*Id.* at ¶ 47). Highley responded that Doe was under no obligation to submit a statement, but that the investigation would continue pursuant to Miami University protocol. (*Id.*). On December 6, 2018, Doe was given an opportunity to provide comments on a draft of the investigative report, but again declined to provide comment, although he told Highly "though I do have comments." (*Id.* at ¶ 48). Doe again offered to provide a statement when the criminal investigation was resolved and asked that Miami University delay in issuing a final report. (*Id.*). Doe also wrote to Highly that "I would respectfully ask that you do not hold my silence against me in your investigation, as my silence is 100% related to the possible criminal case." (*Id.*). Highley responded, "The Title IX investigation process is prompt, fair and impartial for both the complainant and the accused; I do not hold your silence against you nor can I reasonably delay the delivery of an investigation report pending a criminal case's uncertain timeline or outcome." (*Id.*).

The investigative report was completed on December 10, 2018 and found "reasonable cause to proceed with disciplinary charges" against Doe. (*Id.* at ¶ 49). The investigative report noted that Doe "waived his right to comment pending the outcome of

the criminal investigation" and that the "unopposed facts available . . . corroborate that [Doe] initiated and engaged in non-consensual sexual intercourse with [Roe]." (*Id.*).

Defendant Larissa Marple reached out to schedule a procedural review with Doe to discuss the disciplinary process. Doe requested that the hearing be delayed until the criminal process is complete and declined to attend the procedural review meeting. Marple stated that because the Miami University process is not dependent on the criminal process, the process would go forward. Doe requested that "[i]f the matter is set for an Administrative Hearing, . . . the panel be instructed that they cannot draw any inference from my silence." Marple did not respond to the request. (*Id.* at ¶ 50).

Doe was notified that a disciplinary hearing was set for March 1, 2019 and that he should provide:

> 1. A list of witnesses you intend to present to provide information to the Hearing Panel.
>
> 2. Any supporting documents you want the Hearing Panel to consider that are not already included in the Investigation Report including, but not limited to, audio recordings, social media messages/postings (Facebook, Twitter, Instagram) police reports, photographs, videos, etc.
>
> 3. Any written statements you want the Hearing Panel to consider including, but not limited to, statement of the complainant or the accused.

(*Id.* at ¶ 53).

Doe then filed the present suit to prevent the disciplinary hearing from taking place. Doe filed a motion for temporary restraining order and preliminary injunction to prevent the hearing (Doc. 2), which was subsequently denied as moot because the parties

agreed to delay the hearing. However, Doe was notified that Miami University intended to schedule his disciplinary hearing in April 2019 and filed this renewed motion for preliminary injunction. (Doc. 11).

**B. Miami University Policies**

Miami University has adopted the Sexual Misconduct Policy and Procedure for Students at Miami University 2018-2019. (the "Sexual Misconduct Policy", Doc 1-1). The Sexual Assault Misconduct Policy defines sexual assault as "any sexual act directed against another person, without their consent, including instances where the person is incapable of giving consent." (*Id.* at 2). Sanctions for violations of the Sexual Misconduct Policy include dismissal, suspension, removal from campus housing, educational intervention, no-contact orders and restrictions from participating in intercollegiate athletics or co-curricular activities. (*Id.* at 15–16). The Sexual Misconduct Policy further states that Miami University is committed to "[p]rocesses for reliable and impartial investigation and adjudication that include appropriate disciplinary sanctions for those who commit Title IX violations, including suspension and dismissal." (*Id.* at 1).

The Sexual Misconduct Policy emphasizes the following rights of accused students:

> It must be recognized that the accused in a University investigation has legal and other rights and that complaints in which each of the parties are members of the campus community are ethically and legally complex. A presumption of responsibility should not be made as a result of any allegations

(*Id.* at 16).

The Sexual Misconduct Policy specifically contemplates simultaneous University and criminal investigations, stating:

> Students who believe they have experienced sexual misconduct or interpersonal violence may report both to the University's Deputy Title IX Coordinator and pursue criminal charges against the person or persons they believe to have committed the crime. A criminal charge and a University Investigation may be pursued at the same time

(*Id.* at 5).

The Sexual Misconduct Policy states that an investigation and adjudication process "will take approximately 60 calendar days" depending on the "complexity of the investigation and the severity an extent of the alleged violation." (*Id.* at 17).

Reported sexual misconduct is typically investigated by the Office of Community Standards. Disciplinary hearings for violations of the Sexual Misconduct Policy are held before an Administrative Hearing Panel comprising two faculty and one staff member. (*Id.* at 30). An accused student is permitted to file a written statement, submit information, and present relevant witnesses. (*Id.* at 14). During meetings or hearings, the Sexual Misconduct Policy permits an accused student to be accompanied by an "advisor," who may be an attorney. The Sexual Misconduct Policy states that the "role of the advisor is only to be present; they will not be provided documentation or permitted to interject during the meeting." (*Id.* at 27).

The Code of Student Conduct includes policies, procedures, and sanctions that apply to all violations of the Sexual Misconduct Policy. (Doc. 1-2).

The Sexual Misconduct Policy is silent to whether an accused student remaining silent will be used against the accused student.

Doe seeks a preliminary injunction prohibiting Defendants from proceeding with a disciplinary hearing, which he contends violates his constitutional due process rights. Plaintiff claims this case presents a new question: "whether Miami University would violate John Doe's due process rights by failing to delay disciplinary proceedings until the conclusion of any criminal proceedings" because he cannot meaningful participate in the school proceeding because anything he says could be used against him in the criminal proceeding. (Doc. 11 at 2).

## II. STANDARD OF REVIEW

Doe bears <u>the heavy burden</u> of demonstrating his entitlement to a preliminary injunction. An "injunction is an **extraordinary remedy** which should be granted only if the movant carries his or her burden of proving that the circumstances <u>clearly</u> demand it." *Overstreet v. Lexington-Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir. 2002) (emphasis added). Thus, the party seeking the injunction must establish its case by clear and convincing evidence. *Marshall v. Ohio University*, No. 2:15-cv-775, 2015 WL 1179955, at *4 (S.D. Ohio Mar. 13, 2015) (citing *Honeywell, Inc. v. Brewer-Garrett Co.*, 145 F.3d 1331 (6th Cir. 1998)).

In determining whether to grant injunctive relief, this Court must weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others;

6

and (4) whether the public interest would be served by issuing the injunction. *Id.* These four considerations are factors to be balanced, not prerequisites that must be met. *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000).

### III. ANALYSIS

#### A. Likelihood of Success on the Merits

Doe brings his claim under 42 U.S.C. § 1983, arguing that the Defendants' application of the Sexual Misconduct Policy and Code of Student Conduct violates his right to Due Process under the United States Constitution.

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To show a likelihood of success on a § 1983 claim, a plaintiff must establish two elements: "1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995). There is no dispute that the Defendants, employees of a public university acting in their official capacity, are acting under color of state law, and, therefore, the issue before the Court is whether Doe has

shown by clear and convincing evidence that he is deprived of his constitutional right to Due Process.

As an initial matter, Defendants argue that Doe has no cognizable due process claim because his claims are not ripe. (Doc. 12 at 3–4). Defendants contend that Doe's claims are not ripe because he has failed to engage in or exhaust his available state remedies and processes under the Code of Conduct, which is codified at O.A.C. § 3339-17-03. "While a plaintiff is not required to exhaust state remedies to bring a § 1983 claim, this does not change the fact that no due process violation has occurred when adequate state remedies exist." *Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 997, 941 (7th Cir. 2003).

Plaintiff notes that a court within the Sixth Circuit has recently rejected a similar ripeness argument and issued an injunction against a school disciplinary proceeding prior to a hearing. *Doe v. Univ. of Michigan*, 325 F. Supp. 3d 821, 826 (E.D. Mich. 2018). In that case, the court found that

> if the Court denies this Motion, but ultimately finds that the Policy violates due process, Plaintiff will have been forced to defend himself against serious sexual assault allegations without adequate constitutional safeguards. Defendants essentially ask the Court to sit back and wait . . . But, at this very moment, the University may be denying Plaintiff due process protections to which he is entitled. The Court cannot, and will not, simply stand by as the fruit continues to rot on the tree. This case is ripe for adjudication.

*Id.*

Here, the Court finds that Defendant's ripeness argument is dependent upon the adequacy of the state remedies available to Doe. Accordingly, the Court will next

analyze whether the procedures of Miami University's disciplinary hearing violates Doe's right to due process.

### 1. Due Process Claim

Doe claims that Defendants will violate his procedural due process rights if they do not stay the Miami University disciplinary hearing while the criminal investigation into the alleged sexual assault is pending. Doe claims his constitutional right to remain silent during a criminal investigation is violated if he is forced to represent himself in a school disciplinary hearing.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In order to show a likelihood of success on a procedural due process claim, a plaintiff must (1) "establish a constitutionally protected liberty or property interest" and (2) "show that such an interest was deprived without appropriate process." *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 762 (6th 2005).

#### a. Doe has shown that his liberty and property interests are implicated

Defendants do not dispute that Doe has "a substantial interest at stake" in Miami University's disciplinary hearing. *Doe v. Baum*, 903 F.3d 575, 582 (6th Cir. 2018).

The Sixth Circuit has made clear that procedural due process is "implicated by higher education disciplinary decisions." *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005); *see also Cummins*, 662 Fed.Appx. at 445 (recognizing that due process "protections apply to higher education disciplinary decisions). Moreover, "[s]uspension

'clearly implicates' a protected property interest, and allegations of sexual assault may 'impugn' [a student's] reputation and integrity, thus implicating a protected liberty interest." *Doe. v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017) (citing *Cummins*, 662 Fed.Appx. at 445).

Doe has identified property and liberty interests at stake. Therefore, the Court must determine if those interests may be deprived without appropriate process.

### b.  Doe has not shown that he will be deprived of liberty and property interests without appropriate process.

In *Mathews*, the Supreme Court established a three-factor framework to evaluate the procedural protections due in a given situation: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Miami Univ.*, 882 F.3d at 600 (citing *Mathews*, 424 U.S. at 335 (quotations omitted)).

When facing suspension, as is the situation here, a student is entitled to "the opportunity to be heard at a meaningful time and in a meaningful manner." *Cummins*, 662 Fed. App'x at 446 (quoting *Mathews*, 424 U.S. at 333). At a minimum, a university must provide a notice of charges, an explanation of evidence against the student, and an opportunity for the student to present his or her side of the story before unbiased decisionmakers. *Id.* at 399–400. Importantly, "[r]eview under *Mathews* asks only

whether [the accused] 'had an opportunity to respond, explain, and defend,' not whether a jury could constitutionally convict him using the same procedures." *Univ. of Cincinnati*, 872 F.3d at 400 (quoting *Cummins*, 662 Fed.Appx. at 446).

### i. Private interest at stake

As to the first *Mathews* factor, as the Court noted above, Doe's private interest at stake – his educational and employment opportunities and reputation – is significant. The Sixth Circuit supports Doe's stance, having found that the private interest at stake in school disciplinary hearings is "substantial." *Univ. of Cincinnati*, 872 F.3d at 406. Accordingly, the first factor in the due process test weighs in Doe's favor.

### i. Procedures used

As to the second *Mathews* factor, Doe contends that the procedures used by Miami University are constitutionally inadequate because his constitutional right to remain silent during a criminal investigation is violated if he is forced to represent himself in a school disciplinary hearing. Therefore, Doe seeks to add an additional safeguard to Miami University's procedure: to require Miami University to delay any disciplinary hearing pending outcome of the criminal investigation into the alleged sexual assault.

"It is clear that nothing in the Constitution requires a civil action to be stayed in the face of a pending or impending criminal indictment . . . and there is no requirement that a civil proceeding be stayed pending the outcome of the criminal proceedings" *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014) (internal citations and quotation marks omitted).

This Court is unaware of any cases within the Sixth Circuit in which a student facing simultaneous school disciplinary hearings and criminal investigations sought to have the disciplinary hearings stayed until the criminal investigation concluded. Yet numerous courts presented with circumstances where school disciplinary hearings were conducted concurrently with criminal investigations have found the disciplinary hearings to provide adequate due process. For example, in *Pierre v. University of Dayton*, 143 F.Supp.3d 703 (S.D. Ohio 2015), the court found that the university had adequately protected the due process rights of a student—who was under criminal investigation for sexual assault allegations—where the school allowed the student to submit a written statement due to a pending criminal investigation and allowed counsel to accompany the student throughout the process, but not actively participate. *Id.* at 710–13.

The Court is not unsympathetic to the dilemma that Doe faces. In *Gabrilowitz v. Newman*, 582 F.2d 100 (1st Cir. 1978), the First Circuit aptly described the difficult choices that a student like Doe faces:

> Were the [student] to testify in the disciplinary proceeding, his statement could be used as evidence in the criminal case either to impeach or as an admission if he did not choose to testify. [The student] contends that he is, therefore, impaled on the horns of a legal dilemma: if he mounts a full defense at the disciplinary hearing without the assistance of counsel and testifies on his own behalf, he might jeopardize his defense in the criminal case; if he fails to fully defend himself or chooses not to testify at all, he risks loss of the college degree he is within weeks of receiving and his reputation will be seriously blemished.

*Id.* at 103.

In resolution, the appellate court held that the student's testimony in the school disciplinary hearing would be voluntary, and therefore not compelled in violation of the Fifth Amendment.

> Although the possibility of expulsion may make participation a wise choice, procedures do not place appellee "between the rock and the whirlpool." *Garrity v New Jersey*, *supra*, 385 U.S. at 598, 87 S.Ct. at 619. He can, if he wishes, stay out of the stream and watch the proceedings from dry land. But, if he does so, he forfeits any opportunity to control the direction of the current. [The student] must decide whether or not to testify at the hearing with the knowledge that, if he does, his statements may be used against him in the criminal case.

*Id.* at 104.

Notably, in *Gabrilowitz*, the First Circuit did find that the student had a right to legal representation due to the pending criminal proceeding. *Id.* at 107. However, here the remedy Doe seeks is not the opportunity to have active legal representation at his disciplinary hearing, but a stay of the hearing altogether. The Court finds that precedent clearly establishes that this in an inappropriate remedy.

The Court does not find that Plaintiff's procedural due process rights will be violated by allowing Miami University's disciplinary proceeding to proceed. Miami University's procedures allow the "opportunity to be heard at a meaningful time and in a meaningful manner" as he has the opportunity to present his "side of the story before an unbiased decision maker." *Univ. of Cincinnati*, 872 F.3d at 399 (6th Cir. 2017). Where a student is accused of sexual assault, the Sixth Circuit has still found that a school's procedures "need not reach the same level that would be present in a criminal prosecution." *Id.* at 400.

As discussed above, Miami University has established extensive procedures to protect the due process rights of students accused of sexual assault. (*See* Sexual Assault Misconduct Policy). Doe is permitted to introduce documentary evidence, call exculpatory witnesses, cross-examine witnesses, and have an attorney present. He is not faced with a situation where he will be suspended or expelled if he does not offer a statement, so his testimony is not compelled. If Doe chooses to testify at the hearing, he can choose to answer questions or not answer questions as he sees fit, with assistance of his counsel. He is not being forced to provide self-incriminating testimony. Importantly, Defendants have stipulated that it will not hold Plaintiff's silence against him.[2] (Doc. 12 at 14). The Court finds that Doe's procedural due process rights are adequately protected by the procedures established by Miami University.

Miami University's procedures for the disciplinary hearing do <u>not</u> provide inadequate due process to Doe. Accordingly, the second factor in the due process test weighs in Defendants favor.

### ii. Miami University's interest

The Sixth Circuit has found that a university has a strong interest "in eliminating sexual assault on its campus and establishing a fair and constitutionally permissible disciplinary system." *Univ. of Cincinnati*, 872 F.3d at 404 (quoting *Doe v. Univ. of Kentucky*, 860 F.3d 365, 370 (6th Cir. 2017)). Universities also have a well-recognized

---

[2] Plaintiff notes that, in the investigative report, Defendant Highley referred to alleged facts that Doe chose not to respond to as "unopposed." (Doc. 2-1 at ¶ 7). If the Administrative Hearing Panel were to refer to allegations that Doe chooses to not respond to as "unopposed," it may raise due process issues, but no such issues are currently before the Court.

"interest in maintaining a learning environment free of sex-based harassment and discrimination. *Id.* at 402 (citing *Bonnell v. Lorenzo*, 241 F00, 822 (6th Cir. 2001). Moreover, the Court finds that Miami University has a strong interest in responding promptly to sexual assault allegations.

Regarding the interest a university has in addressing sexual assault allegations, this Court has observed that:

> universities are often confronted with a catch-22 in responding to sexual harassment allegations. If universities too quickly mete out disciplinary action to alleged sexual harassment perpetrators, they leave themselves open to due process claims. If universities do not mete out disciplinary actions quickly enough, they leave themselves open to claims under Title IX.

*Schoewe v. Univ. of Cincinnati*, No. 17-cv-504, slip op. at 9 (S.D. Ohio June 15, 2018).

Here, Miami University has established fair and constitutionally permissible procedures for addressing sexual assault allegations. It is in the interest of all parties, including Miami University, the alleged victim, and Doe to have fair and prompt investigations and hearings to address sexual assault allegations.

If Doe's requested relief were granted, Miami University would be prevented from addressing sexual assault allegations until any criminal investigations were concluded – and even then Doe's remedy may in fact prevent a university from holding disciplinary hearings until the statute of limitations for sexual assault (twenty-five years in Ohio) had passed because, even if there were no ongoing criminal investigation at the time of the school hearing, the evidence established during a school disciplinary hearing could hypothetically be used in a future criminal investigation.

15

Doe also seemingly argues that Miami University does not have a strong interest in promptly conducting the campus hearing because Doe is currently on a leave of absence from Miami University for medical reasons. (Doc. 1 at ¶ 3). This argument lacks merit as Doe is absent from campus by his own choice. There is currently nothing preventing Doe from returning to campus. Miami University has a strong interest in maintaining a campus environment free of sexual harassment and sexual assault. Therefore, if the Administrative Hearing Panel finds that Doe is in fact responsible for violating the Sexual Assault Misconduct Policy, it is in the University's interest to be able to provide appropriate disciplinary sanctions, whether or not Doe is voluntarily absent from campus. Miami University, therefore, has a strong interest in promptly proceeding with Doe's disciplinary hearing.

Accordingly, the third factor in the due process test weighs in Defendants' favor. Upon balancing the three factors, the Court finds Doe has not proven a violation of his due process rights by clear and convincing evidence. Furthermore, because the Court has found that adequate state remedies exist, the Court agrees with Defendants that this action is not ripe.

Thus, because Doe's claims are not ripe and Doe has not demonstrated a likelihood of success on his due process claim, the first element of the injunction test weighs against granting a preliminary injunction.

### B. Doe has not shown irreparable harm

To demonstrate irreparable harm, Doe must show he "will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen,*

16

*Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Harm is irreparable if it cannot be fully compensated by monetary damages. *Overstreet*, 305 F.3d at 578.

Doe is entitled to a presumption of irreparable harm <u>if</u> he demonstrates a likelihood of success on his constitutional claims. *See Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (recognizing that the loss of First Amendment rights, for even a minimal period of time, constitutes irreparable harm). However, as discussed above, Doe has <u>not</u> demonstrated a likelihood of success on his constitutional claims, and thus no presumption of irreparable harm is warranted.

Doe filed the affidavit of Guz Lazares, an attorney who has advised students during numerous disciplinary hearings at the Miami University Office of Community Standards, regarding the likelihood that Doe will be sanctioned if he does not participate in the disciplinary hearing, Mr. Lazares states:

> it is my opinion that if a student does not attend a Title IX Hearing, or offer any statement in the student's own defense at a Title IX Hearing, the accused student is all but certain to be found responsible for the allegations (except, perhaps, if the accuser does not participate in the hearing).

(Doc. 2-2 at ¶ 7).

Even if the opinion of Mr. Lazares turns out to be true, the harm identified is speculative as the Administrative Hearing Panel has made no findings on Doe's case and has established adequate procedures to allow Doe to be heard in a meaningful manner.

Nevertheless, Doe contends that, if a preliminary injunction is not granted, he will suffer irreparable harm because he will be denied the "benefits of education at his chosen school, would damage his academic and professional reputation, and may affect his

ability to enroll at other institutions of higher education and to pursue a career." (Doc. 11 at 16). While the Sixth Circuit has found that a plaintiff's suspension may constitute an irreparable harm, that is when the suspension occurred "after an unfair hearing." *Univ. of Cincinnati*, 872 F.3d at 407. Here, the Court has already found that, based on the record, Doe is not being subjected to an unfair hearing. For those reasons, Doe has not demonstrated irreparable harm.

Accordingly, the second element of the injunction test weighs against granting injunctive relief.

**C. Harm to Others / Public Interest**

The final factor in the injunctive relief analysis is whether granting the injunction would cause harm to others or would affect the public interest. "The irreparable injury [the plaintiffs] will suffer if their motion for injunctive relief is denied must be balanced against any harm which will be suffered by [others] as a result of the granting of injunctive relief." *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982).

Doe contends that an injunction will not cause harm to third parties because he is not present on campus, and therefore any interaction with the alleged victim would be limited and any claim that Doe would pose a threat to the community is unavailable. As already discussed, this argument lacks merit. An alleged victim "[has] a right, and [is] entitled to expect that, [she] may attend [the University] without fear of sexual assault or harassment." *Univ. of Cincinnati*, 872 F.3d at 403. Moreover, an alleged victim of sexual assault "can also expect that [the University] will promptly respond to [her]

complaints." *Id.* Doe currently being away from campus due to medical leave is voluntary. Absent disciplinary hearings, Doe could decide to return to campus. Therefore, the Court finds that third parties may be harmed if an injunction were granted because Doe could return to campus, which could place Doe in close proximity to the alleged victim and interfere with her rights. *See Doe v. Univ. of Cincinnati*, 2015 WL 5729328, at *3 (S.D. Ohio Sept. 30, 2015); *Marshall v. Ohio Univ.*, No. 2:15-cv-775, 2015 WL 1179955, at *10 (S.D. Ohio Mar. 13, 2015) (finding "harm to others" prong weighed against issuance of temporary restraining order where reinstating plaintiff to honors program and placing plaintiff into close proximity with female student could interfere with her rights). Moreover, the alleged victim will be harmed if Miami University is unable to promptly respond to her complaint.

Finally, the public has an "interest in the enforcement of Title IX." *Univ. of Cincinnati*, 872 F.3d at 407. Because Doe has failed to show a likelihood of success on the merits, "Plaintiff has not demonstrated that he suffered a violation of his constitutional rights and thus injunctive relief is not in the public interest." *Univ. of Cincinnati*, 2015 WL 5729328, at *3. Moreover, granting an injunction preventing Miami University from holding a disciplinary until Doe's criminal investigation has concluded "would likely disturb [the University's] ability to enforce its disciplinary procedures, which would not be in the public interest." *Id.*

Accordingly, the final factor in the injunction test does not weigh in favor of granting a preliminary injunction.

Upon balancing the factors relating to the propriety of granting an injunction, and recognizing that it is well established that a finding that there is no likelihood of success on the merits of is usually fatal to a preliminary injunction, the Court finds that Doe is not entitled to a preliminary injunction.

## IV. CONCLUSION

For these reasons, the Court finds that Doe has not established by clear and convincing evidence his entitlement to the extraordinary remedy of a preliminary injunction. Accordingly, Plaintiff's motion for a preliminary injunction (Doc. 11) is **DENIED**.

**IT IS SO ORDERED**.

Date: 4/1/19

Timothy S. Black
United States District Judge